IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEORGE PANOKE, | ) CIVIL NO. 05-00432 JMS/KSC |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' |
| | ) MOTION TO DISMISS AND/OR FOR |
| vs. | ) SUMMARY JUDGMENT AND |
| | ) DENYING PLAINTIFF'S MOTION |
| U.S. ARMY MILITARY POLICE | ) TO SUPPLEMENT THE RECORD |
| BRIGADE, HAWAII; PETE GEREN, | ) |
| Secretary, Department of the Army, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR
FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION
TO SUPPLEMENT THE RECORD**

## I. **INTRODUCTION**

Plaintiff George Panoke ("Plaintiff") filed suit against Defendants

United States Army Military Police Brigade, Hawaii and Pete Geren, Secretary of

the Department of the Army (collectively, "Defendants"), alleging discrimination,

retaliation, and hostile work environment under Title VII, 42 U.S.C. § 2000e, *et*

*seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 633a.[1]  Prior to filing his Complaint with this court, Plaintiff filed three Formal Complaints of Discrimination with the Army.  Defendants move for summary judgment as to Plaintiff's Title VII and ADEA claims raised in Plaintiff's Third Formal Complaint of Discrimination and move to dismiss as to: (1) the claims underlying his First Formal Complaint of Discrimination, which were resolved by a previous settlement agreement; and (2) the claims underlying his Second Formal Complaint of Discrimination because the court is without jurisdiction to consider claims involving the revocation of Plaintiff's security clearance.  For the following reasons, the court GRANTS Defendants' Motion to Dismiss and/or For Summary Judgment.

## II.  **BACKGROUND**

**A.    Factual Background**

Plaintiff is a Hawaii-born male of Chinese and Hawaiian descent who was 62 years old at the time he filed his Complaint.  Plaintiff was hired as a Police Officer at the GS-6 level on March 31, 1999 at the Military Police Brigade at Fort Shafter in Hawaii.  Pl's. Decl. ¶ 2.

---

[1] At oral argument, Plaintiff conceded that based on the record submitted to the court, he was not challenging the Defendants' Motion to Dismiss and/or For Summary Judgment as to his discrimination claims.  Nonetheless, this Order addresses all the claims raised in Plaintiff's Complaint, including retaliation, hostile work environment, and discrimination.

## 1.    *Complaints Regarding Job Performance and Suspension*

Plaintiff received a series of warnings and reprimands based on his job performance beginning in March of 2000.  On March 27, 2000, Sgt. Ronald Kim ("Sgt. Kim"), Plaintiff's Shift Supervisor, issued a Letter of Caution to Plaintiff regarding his continued use of his personal bike for bike patrol after being told twice by supervisors that use of privately owned bikes was not permitted.  Defs.' Ex. B.  Chief Frederick Makinney ("Makinney"), in a memorandum to Plaintiff dated June 28, 2000, repeated that privately owned bikes were not to be used and directed Plaintiff to "[f]ollow all lawful written or verbal instructions given to you by your supervisors"; "[r]espect and utilize your supervisory chain of command"; and "[p]articipate in the Field Training Evaluation Program" ("FTEP").  Defs'. Ex. C.  Plaintiff failed to participate in the FTEP conducted on July 17, 2000 as directed.

Sgt. Kim sent Plaintiff a memorandum dated September 11, 2000 regarding proper patrol procedures at Hale Koa Park in Honolulu.  According to this memorandum, Plaintiff had previously been warned not to give park users who did not have identification the option of returning to the police station for proper identification or leaving the premises if they had not committed a criminal offense.  Defs.' Ex. E.  The memorandum states that two complaints had been

received and directed Plaintiff to stop giving individuals the option of coming to the police station for proper identification or leaving the premises if they had not committed a criminal offense.  *Id.*

Plaintiff's annual employee evaluation for 2000 indicates that Plaintiff "needs improvement" in all areas of responsibility; his overall performance was rated as "fair"; and that Plaintiff's "[p]erformance is counter productive to organizational goals and objectives."  Defs.' Ex. G.

In a memorandum dated February 7, 2001, Makinney notified Plaintiff that he would be suspended from a pay and duty status from February 12 through 15, 2001 for failure to follow instructions and failure to comply with rules for use of the Fort DeRussy MP Station golfcart.  Defs.' Ex. H.

> ### 2.   *Disqualification from the Individual Responsibility Program, First Formal Complaint of Discrimination, and Settlement Agreement*
>
> #### a.   *Individual Responsibility Program disqualification*

On December 9, 2000, Makinney designated Lt. John Little ("Little") to conduct an internal investigation to determine if Plaintiff's "work performance and general conduct justify his retention or permanent disqualification from the [Individual Responsibility Program ("IRP")]."  Defs.' Ex. F.  The IRP, a "condition of employment" for Plaintiff's civilian police position, is part of Army

4

Regulation ("AR") 190-56, the Army Civilian Police and Security Guard Program. *See* AR 190-56 § 3-4 (attached as Defs'. Ex. A). "Any behavior that is considered negligence, insubordination, or delinquency in the performance of duty" is a disqualifying factor under the IRP. AR 190-56 § 3-7(10) (attached as Defs'. Ex. A).

Little submitted his internal investigation report on February 9, 2001, recommending that Plaintiff be disqualified from the IRP because his "defiance of authority, disregard for policy, coupled with a lack of regard for the public and his co-workers is not in keeping with the required standards of the police series." Defs.' Ex. I. The report details nine incidents dating from June 27, 2000 through January 2, 2001, which involved Plaintiff's failure to follow orders or resulted in complaints from the public. Little concluded that Plaintiff "actually thinks he has done nothing wrong and that he has only done his job or what he has been directed by superior's [sic] to do"; Plaintiff "will continue with the type of actions listed above as he truly feels he has done nothing wrong"; Plaintiff "has stated to superiors that when he returns to Fort DeRussy he will continue to perform his job as he always has, as he has done nothing wrong"; and Plaintiff's "conduct creates uneasiness among his coworkers." Defs.' Ex. I.

By memorandum dated March 9, 2001, Makinney notified Plaintiff that he was permanently disqualified from the IRP.  Makinney then proposed that Plaintiff be removed from federal service for failure to meet the conditions of employment in a July 26, 2001 memorandum to Plaintiff.  Defs.' Ex. J.

### b.    First formal complaint of discrimination

On July 13, 2001 Plaintiff filed a written demand for Grievance Arbitration.  He then filed a Formal Complaint of Discrimination with the Army on October 4, 2001 ("First Formal Complaint"), alleging that Defendants subjected him to "continuous and ongoing discrimination, disrespect and reprisal actions based on a previous Equal Opportunity Complaint."  Defs.' Ex. L.[2] Plaintiff sought the revocation of his four-day suspension, reinstatement of pay, and return to duty at Fort DeRussy.  *Id.*

On December 5, 2001, Lt. Col. Gary Milner notified Plaintiff that he would not be removed from service, but would be reassigned to the Waianae Army Recreation Center.  Defs.' Ex. M.

///

///

---

[2] The "previous Equal Opportunity Complaint" does not appear to be related to his disqualification from the IRP and is not before the court.

c.      *Settlement agreement*

Plaintiff's Grievance Arbitration and his First Formal Complaint were resolved in a July 11, 2002 Release and Settlement Agreement ("Settlement Agreement").  Under the terms of the Settlement Agreement, Plaintiff's four-day suspension was rescinded, he received four days of back pay, he was granted a within grade increase to GS-6, step 2, and his "fair" performance rating in his 2000 annual evaluation was removed.  Defs.' Ex. N ¶ 3.  The Settlement Agreement states in part:

> Grievant's signature on this agreement constitutes a release and full and complete settlement of any and all issues and claims arising from the circumstances of the aforementioned Grievance Arbitration and EEO complaint. . . .  In addition, the Grievant agrees to release and waive his right to pursue administrative or judicial action in any forum, against the Employer or its individual employees, in their individual or official capacities, concerning the matters raised in this Grievance Arbitration and EEO complaint prior to the execution of this agreement, and that these matters will not be made the subject of future litigation.
>
> * * * *
>
> This Agreement constitutes the complete understanding between the Grievant and the Employer.  No other promises or agreements will be binding unless signed by both parties.

*Id.* at ¶¶ 5, 9.  The Settlement Agreement was signed by the Plaintiff, his union representative, Col. Arnaldo Claudio ("Claudio"), Commander of the Military Police Brigade, and an Army JAG officer.

According to Plaintiff, before he signed the Settlement Agreement, he met with Claudio to discuss settlement options.  Pl.'s Decl. ¶ 6.  At the time, Plaintiff believed that he "would be given a permanent GS-7 promotion" in the settlement.  *Id.*  Claudio stated that when he "ordered these corrective actions for Officer Panoke, I also included a subsequent promotion to a higher grade as a Sgt. in the new Pacific Area Police Academy Training organization which I intended to fully implement."  Supplemental Claudio Decl. ¶ 8 (attached as Pl.'s Ex. 14B). The Settlement Agreement does not mention a promotion to a permanent GS-7 position.

Plaintiff was given a term appointment as Supervisory Police Officer (GS-7) effective July 28, 2002.  *See* Defs.' Ex. CC.  The position was a "TEMP Training Officer position within the newly forming Hawaii mobile assistance Training Team for the training of [Army] Police personnel at Fort Greely, Alaska." Pl.'s Decl. ¶ 7.  According to Plaintiff:

> As I entered the agreement to be assigned the TEMP position, Col. Claudio assured me that the position was labeled "temp" not because the duties and functions were expected to be temporary in nature, but because the permanent funding, which came from superior headquarters in Alaska, had not yet been finalized.  This and other similar positions, funded by other HQ's, were known as "over-hires."  Col. Claudio promised me that my Training Team assignment would be renewed at the end of my term appointment or, in the alternative, that I would

8

> be re-assigned another similar Pacific Basin Training position within the Military Police Brigade at Ft. Shafter.

*Id.*  Plaintiff, however, also admitted that Claudio did not make any affirmations or promises to him with regard to what would happen to his employment after the temporary position expired.  *See* Pl.'s Dep. Tr. at 87 (attached as Ex. A. to Watson Decl.).  Claudio "did not indicate anything or mention or discuss anything about the position, the temporary position hire that I was in and what would happen thereafter."  *Id.*

On July 25, 2002, Plaintiff signed a "Statement of Understanding" acknowledging: "I understand that I am accepting a term appointment which does not afford any permanent status and may be terminated at any time."  Defs.' Ex. DD.

### 3. *Revocation of Security Clearance and Second Formal Complaint of Discrimination*

#### a. *Plaintiff's Security Clearance*

Throughout 2001, prior to the Settlement Agreement, Plaintiff's supervisors forwarded several Report of Unfavorable Information for Security Determination forms ("DA Form 5248-F") to the Army Central Personnel Security Clearance Facility ("CCF").  Under Army Regulations, adverse information bearing on an employee's eligibility for a security clearance must be reported to

9

CCF.  *See* AR 380-67 § 9-100 (attached as Defs.' Ex. O).  Adverse information includes incidents, infractions, citations, irresponsibility, instability, or recklessness.  *Id.* at App. E.

Little sent a DA Form 5248-F dated January 21, 2001 to CCF indicating that Plaintiff was suspended for four days for disobeying verbal and written directives.  Defs.' Ex. P.  He sent another dated March 16, 2001 stating that Plaintiff had been disqualified from the IRP.  Defs.' Ex. Q.  A third, dated July 9, 2001, notes that a temporary restraining order had been issued against Plaintiff in a pending Hawaii state court case.  Defs.' Ex. R.  Finally, a September 7, 2001 DA Form 5248-F states that a request for Plaintiff's removal from service had been submitted.  Defs.' Ex. S.  All four of the forms submitted by Little recommended that Plaintiff retain his security clearance.

The CCF initiated a review of Plaintiff's security clearance in January, 2002.  Plaintiff underwent a mental health evaluation in conjunction with the review.  The CCF issued a memorandum dated July 16, 2002 indicating that it intended to revoke Plaintiff's security clearance.  Defs.' Ex. U.  Plaintiff sent a written objection to CCF dated October 14, 2002.  Defs.' Ex. V.  By memorandum dated February 10, 2003, the CCF revoked Plaintiff's security clearance.  Defs.' Ex. X.

   b.    *Second formal complaint of discrimination*

On May 29, 2003, Plaintiff filed his second Formal Complaint of

Discrimination ("Second Formal Complaint") alleging discrimination based on

race ("Hawaiian"), color ("Brown"), national origin ("Hawaiian = local"),

handicap ("mental"; "perceived/regarded as"), age ("60"), and reprisal.  Defs.' Ex.

Z.  The alleged discrimination was based on the submission of the DA Form 5248-

F forms to CCF and the mental health evaluation made part of the CCF's security

clearance review.  *Id.*

**4.    *Plaintiff's Employment at Fort Greely and Third Formal
       Complaint of Discrimination***

Plaintiff was employed as a Supervisory Police Officer (GS-7),

training the military police force at Fort Greely, Alaska, from July 28, 2002 until

the position expired on July 27, 2004.  Plaintiff claims that he requested a pair of

cold weather boots for his work in Alaska, but that Defendants refused to provide

them.  Pl.'s Dep. Tr. at 77 (attached as Pl.'s Ex. 11).  Both Plaintiff and one of

Plaintiff's coworkers, Sgt. Gregory Williams, requested and were issued various

cold weather gear items, but neither were given cold weather boots.  *Id.* at 78.

Later, Williams allegedly did receive a pair of cold weather boots from his wife,

who is also in the Army.  *Id.*  Plaintiff purchased his own boots and was reimbursed by the Army.  *Id.*

Plaintiff also claims that his request for overtime payment was improperly denied.  *Id* at 69-70.  According to Plaintiff: "I would put in for overtime, and they would certainly not want to approve it.  I can't recall now if they did, you know, for those periods I'm talking about in particular when I was teaching at Fort Shafter."  *Id.* at 66-67.  While at Fort Greely, Plaintiff conducted two hours per day of additional academy training for two weeks for a new hire who began later than the rest of the group.  *Id.* at 69.  He claims that he and a co-worker, Sgt. Jeffrey Straight, "both submitted requests for overtime" and both requests were initially turned down.  *Id.* at 68-69; 70.  According to Plaintiff, his request was initially denied, but "months later the overtime was finally approved" for both Plaintiff and Sgt. Straight.  *Id.* at 70-71.

Plaintiff was one of three term employees from Fort Shafter who trained new hires at Fort Greely.  The three temporary positions expired on July 27, 2004.  In May of 2003, Fort Greely Garrison Commander Louis Roach ("Roach") "determined that Fort Greely no longer required training assistance from Fort Shafter, and declined to extend funding for further use of temporary employees."  Roach. Decl. ¶ 4 (attached as Defs.' Ex. EE).  According to Roach,

> My decision to discontinue funding for use of training
> instructors from Fort Shafter, Hawaii, was made without any
> consideration as to the individuals from the Fort Shafter
> Military Police Battalion who had served as training instructors
> at Fort Greely.  I did not, for example, take into consideration
> the race, national origin, or physical or mental impairments, or
> prior EEO activity of these instructors in making the decision
> to discontinue this funding.  I, or to my knowledge any of my
> staff or workforce, was not aware of any of these
> considerations regarding the Hawaii employees.  My decision
> was based solely on the fact we had reached self-sustainment
> capability and nothing else.  Had I needed the support to
> continue, I could have secured the funding required to
> continue.
>
> * * * *
>
> I am, similarly, not aware of either any physical or mental
> impairment, or prior EEO activity on the part of Mr. Panoke.

*Id.* at ¶¶ 5, 6.

On July 21, 2004, Plaintiff filed his third Formal Complaint of

Discrimination ("Third Formal Complaint") claiming discrimination based on race

("Hawaiian"), national origin ("Hawaiian"), disability ("Mental"), and reprisal

("Retaliation for previous EEO Activity").  Defs'. Ex. BB.  The Third Formal

Complaint alleges that Defendants interfered with Plaintiff's "ability/qualification

to 'apply-out' from current term appointment and failure to extend term

appointment due to expire 27 July 2004"; denial of overtime; "[o]ngoing

harassment [including] denial (non-issue) or cold weather gear for Alaska training,

denial of overtime and comp-time request, removal of instructor's duties at the

13

Shafter Academy, belittle as to 'who is to be the senior instructor', and work hour restrictions."  *Id.*

## B.      Procedural Background

Plaintiff filed his Complaint on July 11, 2005, alleging unlawful discrimination "based upon race, color, national origin, age, and in retaliation for his prior equal employment opportunity ("EEO") activity, and for subjecting him to hostile work environment," in violation of Title VII the ADEA.  Compl. ¶ 1.

Defendants' filed their Motion to Dismiss and/or for Summary Judgment on June 26, 2007[3] and argue that: (1) all claims based upon or arising out of the facts underlying Plaintiff's First Formal Complaint are barred by the affirmative defense of prior accord and satisfaction based on the Settlement Agreement; (2) Plaintiff's claims involving the revocation of his security clearance are non-justiciable and must be dismissed for lack of subject matter jurisdiction; and (3) Plaintiff failed to raise his hostile work environment claim during the administrative process so that it must be dismissed for failure to exhaust administrative remedies.

---

[3] Defendants previously filed their Motion to Dismiss and/or for Summary Judgment on October 4, 2006.  On November 24, 2006, Defendants' motion was deemed withdrawn to allow Plaintiff to conduct discovery.  Defendants refiled the motion on June 26, 2007.

14

The court ordered supplemental briefing on Plaintiff's hostile work environment claim at the August 20, 2007 hearing. Plaintiff filed his Supplemental Brief on August 24, 2007 setting forth the factual basis for his claim that he was subject to a hostile work environment in retaliation for engaging in protected activities. Plaintiff identified the following relevant events as part of his hostile work environment claim: (1) an October 23, 2002 memorandum from Police Chief Roger Dean to CCF recommending "with some reservation" that Plaintiff retain his security clearance; (2) Plaintiff was denied cold weather boots while assigned to Fort Greely; (3) Plaintiff was provided a draft memorandum by his supervisor telling him that he had failed to comply with procedures for requesting overtime; (4) Plaintiff complained that he was being required to work overtime without compensation and other individuals were not; and (5) Plaintiff was informed that his term position would not be renewed and that he would not be given a position at his earlier GS-6 level. Pl.'s Supplemental Br. 2-4. Defendants' Supplemental Brief filed on August 31, 2007 argues that Plaintiff failed to exhaust his administrative remedies and has not established a hostile work environment or a harassment-based retaliation claim.

On August 31, 2007, Plaintiff filed an Ex Parte Motion to Supplement Record Regarding Defendant's Apparent Reliance Upon the Integration Clause in

the Parties 2002 Settlement Agreement.  The ex parte motion does not attempt to supplement the record with new evidence, but instead advances Plaintiff's additional "counter-argument, that the integration clause is non-operative under the facts and circumstances of this case because the provisions relied upon by Plaintiff were part of the original agreement and simply inadvertently omitted from the signed Settlement Agreement document."  Mem. in Supp. of Ex Parte Mot. 3-4.  Defendants filed a response on September 6, 2007, asking the court to strike Plaintiff's ex parte motion as an unauthorized sur-reply.

## III.  <u>STANDARDS OF REVIEW</u>

### A.    **Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  An issue of fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24.  "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (*quoting Celotex*, 477 U.S. at 322).  Moreover, there is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find in favor of the non-moving party.  *Matsushita*, 475 U.S. at 586; *Taylor*, 880 F.2d at 1045.

**B.     Motion to Dismiss**

A federal court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  "[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined to the four corners of the complaint -- it may consider facts and need *not* assume the truthfulness of the complaint[,]" and the existence of disputed material facts will not preclude the court from evaluating the existence of subject matter jurisdiction. *Americopters, LLC v. Fed. Aviation Admin.,* 441 F.3d 726, 732 n.4 (9th Cir. 2006). Accordingly, the court may use affidavits and other forms of competent evidence offered by the parties in order to resolve the disputed jurisdictional issues without converting the motion to dismiss into one for summary judgment.  *See Sudano v. Fed. Airports Corp.*, 699 F. Supp. 824, 825-26 (D. Haw. 1988); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514(2006) ("[I]f subject matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the disputes on [his or] her own.").

## IV.  <u>ANALYSIS</u>

**A.     Accord and Satisfaction Based on the Settlement Agreement**

Defendants seek dismissal of any claims premised upon Plaintiff's First Formal Complaint based on the defense of accord and satisfaction, including

claims relating to the series of reprimands from Plaintiff's supervisors beginning in March 2000, Plaintiff's 2002 annual employment evaluation, his four-day suspension in February 2001, and his disqualification from IRP in March 2001.

The Settlement Agreement resolving Plaintiff's First Formal Complaint and his Grievance Arbitration constituted "a release and full and complete settlement of any and all issues and claims arising from the circumstances of the aforementioned Grievance Arbitration and EEO complaint." Defs'. Ex. N.  Further, Plaintiff agreed to "release and waive his right to pursue administrative or judicial action . . . concerning the matters raised in this Grievance Arbitration and EEO complaint prior to the execution of this agreement, and that these matters will not be made the subject of future litigation."  *Id.*

Plaintiff asserts that he is not seeking redress for acts that were the subject of the Settlement Agreement and that this information was included in the Complaint "for background purposes only" and "to show the intent of the actors." Pl's. Mem. in Opp'n 24-25.  The court therefore GRANTS Defendants' Motion to Dismiss the claims arising out of the facts underlying Plaintiff's First Formal Complaint.

///

///

**B.     Claims Related to Plaintiff's Security Clearance are Non-Justiciable**

The parties agree that the court is without subject matter jurisdiction to review the CCF's revocation of Plaintiff's security clearance. *See Dep't of Navy v. Egan*, 484 U.S. 518, 529-30 (1988); *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990). Plaintiff claims that the "Complaint does not seek any remedy relating to Plaintiff's security clearance." Pl.'s Mem. in Opp'n 25. Instead, Plaintiff asserts that the "claim here is not procedural and in essence is that Chief Makinney's regime submitted information known to be spurious to the CCF for the purpose of retaliating against Plaintiff." *Id.* at 26. Plaintiff's argument misses the point. To review the circumstances under which Defendants submitted DA Form 5248-F forms to CCF as evidence of retaliation, "is to review the basis of the determination itself, regardless of how the issue is characterized." *Hall v. Dep't of Labor, Admin. Review Bd.,* 476 F.3d 847, 853 (10th Cir. 2007).

Absent express statutory authority to review security clearance decisions, courts are without jurisdiction to review not only the security clearance decision, but also the security clearance process and investigation. *See id.*; *see also Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) ("[T]he distinction between the initiation of a security investigation and the denial of a security clearance is a distinction without a difference. . . . Thus, if permitted to review the

20

initial stage of a security clearance determination to ascertain whether it was a retaliatory act, the court would be required to review the very issues that the Supreme Court has held are non-reviewable."); *Hill v. White*, 321 F.3d 1334, 1336 (11th Cir. 2003) ("To review the initial stages of a security clearance determination is to review the basis of the determination itself regardless of how the issue is characterized."); *Cobb v. Danzig*, 190 F.R.D. 564, 566 (S.D. Cal. 1999) ("Title VII does not confer authority on the federal courts to weight the merits of security clearance decisions, even where there is independent evidence of a discriminatory motive.").  The court is therefore without jurisdiction to review Plaintiff's claims regarding the submission of DA Form 5248-F forms to CCF, allegedly in retaliation for Plaintiff's protected activities.  With respect to Plaintiff's claims involving the investigation, review, and revocation of his security clearance, Defendants' Motion to Dismiss is GRANTED.

///

///

///

///

///

///

## C.    Discrimination Claims

Plaintiff's Complaint alleges discrimination based upon race, color, national origin, and age in violation of Title VII[4] and the ADEA.[5]  Compl. ¶ 1. The court applies the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792  (1973), burden-shifting scheme to Plaintiff's Title VII claims.

To survive a motion for summary judgment, Plaintiff must proffer admissible evidence as to each element of his claims.  *See Texas Dep't of Com. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position and was

---

[4] Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or "to limit, segregate, or classify . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race . . . ."  42 U.S.C. §§ 2000e-1(a)(1), 2000e-2(a).

[5] Although Plaintiff's Complaint alleges discrimination based on age, Plaintiff cannot maintain a claim under the ADEA because he did not allege age discrimination in his Third Formal Complaint and because the claims raised in his First and Second Formal Complaints (including those based on age discrimination) are dismissed, as discussed *supra*.  The Third Formal Complaint alleges discrimination based on race ("Hawaiian"), national origin ("Hawaiian"), and disability ("Mental"), but not age.  Defs'. Ex. BB.

Even if the court were to consider Plaintiff's ADEA claims, the analysis and outcome would be the same as Plaintiff's Title VII claims.  Under the ADEA, employers may not "fail or refuse to hire or . . . discharge any individual [who is at least forty years old] or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).   The court applies the same *McDonnell Douglas Corp. v. Green*, 411 U.S. 792  (1973)*, burden-shifting scheme to Plaintiff's Title VII and ADEA claims.  *See Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004) (applying the *McDonnell Douglas* framework to ADEA claims where an employee must rely on circumstantial evidence of discrimination).

performing his job in a satisfactory manner; (3) he suffered an adverse personnel action at the hands of the defendant employer; and (4) the defendant treated similarly situated individuals not of his protected class more favorably.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).  "A plaintiff's failure to offer evidence establishing a necessary element of his prima facie case will ordinarily be fatal to his claim."  *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).[6]

Even under the low burden of proof required at the prima facie stage, Plaintiff has failed to set forth admissible relevant evidence that he performed his job in a satisfactory manner or that he was treated any differently than similarly situated individuals of a different race, color, or national origin.  Plaintiff has come forward with no evidence that he suffered an adverse employment action because he was Chinese-Hawaiian, "local," or because of his national origin.  It

---

[6] Establishing a prima facie case "creates a presumption" that the plaintiff's employer undertook the challenged employment action because of a plaintiff's race, national origin, or age. *Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1028 (9th Cir. 2006).  Defendants, to rebut this presumption, "must produce admissible evidence showing that the defendant undertook the challenged employment action for a 'legitimate, nondiscriminatory reason.'"  *Id.*  (*quoting McDonnell Douglas Corp.*, 411 U.S. at 802.).  If the defendant does so, the burden shifts to the plaintiff to show that the given reason is merely pretext for a discriminatory motive.  *Id.*  "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).  The plaintiff needs to do more than merely deny the credibility of the defendant's proffered reason.  *See Schuler v. Chronicle Broad. Co., Inc.,* 793 F.2d 1010, 1011 (9th Cir. 1986).

appears that Plaintiff has abandoned all of his claims other than those based on retaliation, including his retaliation-based hostile work environment claim. The Complaint's conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's discrimination claims.

## D.    Retaliation Claims

Plaintiff claims that Defendants retaliated against him in violation of Title VII and the ADEA[7]: "the specific retaliation claims for which Plaintiff is seeking relief are the termination of his employment on July 21, 2004 despite the parties [sic] intention that Plaintiff's employment would be continued, as a result of the July 10, 2002 settlement agreement." Pl.'s Mem. in Supp. 21. He further alleges that he was denied work boots and overtime compensation while on assignment at Fort Greely. The court addresses claim each in turn.

---

[7] It appears that Plaintiff has not set forth a claim for retaliation under the ADEA; as discussed *supra,* Plaintiff alleged age discrimination only in his Second Formal Complaint, which the court is without jurisdiction to hear. Plaintiff's remaining retaliation claims stem from his Third Formal Complaint, which alleges discrimination based on race and national origin, but not age.

Nonetheless, because the court's analysis is the same for claims of retaliation under Title VII and the ADEA, the court considers the ADEA claims along with the Title VII claims. *See Hashimoto v. Dalton*, 118 F.3d 671, 675 n. 1 (9th Cir. 1997) (holding that the ADEA anti-retaliation provision is parallel to the anti-retaliation provision contained in Title VII, and "cases interpreting the latter provision are frequently relied upon in interpreting the former." (citation and quotation signals omitted)).

Under Title VII, an employer may not discriminate against an employee because the employee has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice [prohibited by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2410 (2006) ("Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (citations and quotation signals omitted)).

To make a prima facie showing of retaliation, Plaintiff must show that (1) he engaged in a protected activity; (2) Defendants took an adverse action against him; and (3) there was a causal link between his involvement in the protected activity and the adverse personnel action undertaken by the Defendants. *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).  An adverse employment action is one that a reasonable employee would find to be materially adverse, or which would

25

dissuade a reasonable worker from filing a discrimination charge. *Burlington N. & Santa Fe Ry. Co.*, 126 S.Ct. at 2415. The *McDonnell Douglas* framework applies to Plaintiff's retaliation claims. *See McGinest*, 360 F.3d at 1124.

### 1.   *Expiration of Plaintiff's Term Position in 2004*

Plaintiff asserts that he was retaliated against for his previous EEO activities when his term position at Fort Greely expired on July 27, 2004. Defendants argue that Plaintiff failed to establish a prima facie case as to the third prong because he has set forth no evidence that he was subject to an adverse employment action *because of* his protected activities; at best, he has alleged that he suffered an adverse action (non-renewal of term position) *after* he engaged in a protected activity (initiating his Second Formal Complaint). Defendants assert that the 14-month gap between the initiation of his second EEO action (on May 29, 2003) and the non-renewal of his term position on July 27, 2004 is too long to infer causation.

To establish causation, Plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002) (citations omitted). Plaintiff has set forth no evidence that the initiation of his

second EEO action was one of the reasons for his firing and that but for such activity he would not have been fired.

The record demonstrates that Roach made the decision to discontinue funding for the training instructors from Fort Shafter and his unrebutted testimony establishes that he was not aware of Plaintiff's previous protected employment activities. Further, nothing in the record suggests that Makinney or anyone else from the Hawaii Military Police Brigade set in motion, was involved in, had decisionmaking authority, or had any awareness of the decision to discontinue the funding when Plaintiff's term position expired. *See, e.g., Poland v. Chertoff*, 494 F3d. 1174, 1182 (9th Cir. 2007) ("We hold that if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process."). Further, Plaintiff acknowledged that he had no information that contradicts Roach's account, *see* Pl.'s Dep. Tr. at 85 (attached as Ex. A. to Watson Decl.), and he did not believe that Roach, the decisionmaker, discriminated against him. *Id.* at 86-87.

Plaintiff has set forth no evidence of causation and the court will not infer causation based on the 14-month gap between the protected activity and the adverse employment action.[8]  Accordingly, Plaintiff has not made a prima facie case of retaliation with respect to the non-renewal of his term position.[9]

### 2.   *Cold Weather Boots*

Plaintiff claims that he requested a pair of cold weather boots for his work in Alaska, but that Defendants refused to provide them.  Pl.'s Dep. Tr. at 77 (attached as Pl.'s Ex. 11).  Plaintiff purchased his own boots and was reimbursed

---

[8] While courts may infer causation based on a close temporal proximity between the protected activity and alleged violation, the retaliation must be "fairly soon" after the protected activity.  *Villiarimo,* 281 F.3d at 1065.  A temporal distance of several months makes a causal link more difficult to prove.  *See, e.g.*, *Manatt v. Bank of America, NA,* 339 F.3d 792, 802 (9th Cir. 2003) (nine months not sufficiently close to create causal link); *Vasquez v. County of L.A.,* 349 F.3d 634, 646 (9th Cir. 2003) (thirteen-month gap was too long to establish causal connection; *Villiarimo,* 281 F.3d at 1065 (eighteen months too long to establish causal connection).

[9] Even if Plaintiff had made a prima facie showing of retaliation, Defendants have set forth a legitimate non-retaliatory reason for the non-renewal of the three term positions on July 27, 2004.  In May of 2003, Roach "determined that Fort Greely no longer required training assistance from Fort Shafter, Hawaii, and declined to extend funding for further use of temporary employees.  We had the capability in Alaska to accomplish this requirement.  We could train Phase II at Ft. Richardson, Alaska, and we had hired our training officer and had ten qualified instructors at Fort Greely."  Roach. Decl. ¶ 4 (attached as Defs.' Ex. EE).  All three of the temporary positions, including Plaintiff's, expired on July 27, 2004 and were not renewed.  According to Roach, his "decision to discontinue funding for use of training instructors from Fort Shafter, Hawaii, was made without any consideration as to the individuals from the Fort Shafter Military Police Battalion who had served as training instructors at Fort Greely. . . .  My decision was based only on the fact we had reached self-sustainment capability and nothing else.  Had I needed the support to continue, I could have secured the funding required to continue."  *Id.* at ¶ 5.  Plaintiff has come forward with no evidence or argument to show that Defendants' legitimate, non-retaliatory reason is pretext for a retaliatory motive.

by the Army.  *Id.*  Defendants argue that the failure to issue cold weather boots is a trivial employment action, that, even if true, cannot be the basis of a Title VII or ADEA retaliation claim.  The court agrees.

Plaintiff fails to show that the initial denial of cold weather boots and his subsequent reimbursement for their purchase is "materially adverse."  *See Burlington N. & Santa Fe Ry. Co.*, 126 S.Ct. at 2415 ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." (citation and quotation signals omitted)); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation.").  *Burlington Northern* explains: "We speak of *material* adversity because we believe it is important to separate significant from trivial harms."  126 S.Ct. at 2415.  The denial of boots does not rise to the level of material adversity; the fact that Plaintiff's request was initially denied would not deter a reasonable employee from making a charge of discrimination.  Further, Plaintiff admits that he was reimbursed by Defendants when he purchased his own cold weather boots.

Plaintiff fails to set forth a prima facie case of retaliation based upon the cold weather boots.

### 3.   Overtime Compensation

With respect to his claims for overtime, Plaintiff fails to make a prima facie case of retaliation.  As to his overtime requests at Fort Shafter, he could not recall whether his requests were approved or not; Plaintiff claims simply: "I would put in for overtime, and they would certainly not want to approve it.  I can't recall now if they did, you know, for those periods I'm talking about in particular when I was teaching at Fort Shafter."  Pl's Dep. Tr. at 66-67 (attached as Pl.s Ex. 11).  Plaintiff's poor recollection does not establish that he suffered an adverse employment action involving requests for overtime compensation at Fort Shafter.

Further, Plaintiff has failed to establish that his requests for reimbursement were causally related to his EEO activities; instead, Plaintiff's request was treated no differently than other employees' requests at Fort Greely.  Both Plaintiff's and Sgt. Straight's overtime requests for the same time spent on extra training were initially denied.  Additionally, the overtime was later approved for both Plaintiff and Sgt. Straight.  Plaintiff has failed to make a prima facie case for retaliation based on his overtime compensation requests.

Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's retaliation claims.

## E.    Hostile Work Environment Claim

Plaintiff's allegation that he was subjected to a hostile work environment is cognizable under the anti-retaliation provisions of Title VII. *Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir. 2000). "Harassment is actionable only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 1245 (*quoting Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993)). The harassment "must be both objectively and subjectively offensive." *Id.* To determine whether an environment is sufficiently hostile, the court looks "to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation and quotation signals omitted). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (citation omitted).

Defendants argue that Plaintiff failed to initiate contact with an EEO counselor within 45 days of any non-discrete act that allegedly supports his hostile work environment claim.  *See* 29 C.F.R. § 1614.105.  Defendants further argue that even if Plaintiff had timely exhausted, none of his allegations were severe or pervasive enough to alter the terms and conditions of his employment.  The court agrees that Plaintiff's allegations are not sufficient to maintain a hostile work environment claim.

Plaintiff identified the following relevant events as part of his hostile work environment claim: (1) an October 23, 2002 memorandum from Police Chief Roger Dean to CCF recommending "with some reservation" that Plaintiff retain his security clearance; (2) the denial of his cold weather boots; (3) a draft memorandum by his supervisor telling him that he had failed to comply with procedures for requesting overtime; (4) that he was being required to work overtime without compensation and other individuals were not; and (5) being informed that his term position was not renewed.[10]  *See* Pl.'s Supplemental Br. 2-4.

Considering the totality of the circumstances, Plaintiff's allegations are insufficiently severe or pervasive to support a hostile work environment retaliation claim.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

---

[10] As set forth *supra*, the non-renewal of Plaintiff's term position was not connected in any manner with his previous EEO filings.

("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." (citation and quotation signals omitted)).  These incidents occurred over eighteen months (October 23, 2002 through May 27, 2004); they are neither humiliating nor did they involve any allegations of physical or intimidating behavior; and they did not unreasonably interfere with Plaintiff's job performance. Viewing the evidence in the light most favorable to Plaintiff and accepting his allegations as true, the conduct alleged simply does not rise to the level required to maintain a hostile work environment claim.  Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's hostile work environment claims.

## F.      Plaintiff's Ex Parte Motion to Supplement the Record

On August 31, 2007, Plaintiff filed an Ex Parte Motion to Supplement Record Regarding Defendant's Apparent Reliance Upon the Integration Clause in the Parties 2002 Settlement Agreement.  The motion does not attempt to supplement the record with new evidence, but instead advances Plaintiff's additional "counter-argument, that the integration clause [in the Settlement Agreement] is non-operative under the facts and circumstances of this case because the provisions relied upon by Plaintiff were part of the original agreement

and simply inadvertently omitted from the signed Settlement Agreement document." Mem. in Supp. of Ex Parte Mot. 3-4. Plaintiff's Motion to Supplement the Record is DENIED. As Defendants point out, the argument is simply an attempt to offer a sur-reply without good cause. However, even if the court considered the additional argument, it would not impact the court's ruling.

Plaintiff claims that Claudio's alleged promise to keep Plaintiff employed was inadvertently omitted from the 2002 Settlement Agreement[11] and that there is an issue of disputed fact regarding whether Plaintiff was entitled to renewal of the term GS-7 position and/or a GS-6 position at the expiration of the term GS-7 position. Plaintiff's argument is without merit[12] and is undermined by his own submissions.[13]

---

[11] Plaintiff has set forth no evidence regarding the basis for his claim that Claudio's promise to keep him employed was inadvertently omitted.

[12] The parole evidence rule bars Plaintiff's belated attempt to introduce additional, inconsistent terms into the 2002 Settlement Agreement. The Settlement Agreement is unambiguous and a complete and exclusive statement of the terms of the parties' agreement. The Settlement Agreement itself clearly states: "This Agreement constitutes the complete understanding between the Grievant and the Employer. No other promises or agreements will be binding unless signed by both parties." Defs.' Ex. N at ¶ 9. "[O]nce a contract is found to be unambiguous, the parol evidence rule excludes statements offered to contradict a clear contract term in a final expression of agreement." *O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995). Further, Claudio himself does not claim that these additional terms were mutually agreed to as a final term of the Settlement Agreement. *See* Supplemental Claudio Decl. (attached as Pl.'s Ex. 14B).

[13] It is undisputed that Plaintiff was given a temporary, term appointment as Supervisory Police Officer (GS-7) effective July 28, 2002. *See* Defs.' Ex. CC. According to Plaintiff:

(continued...)

# V.  **CONCLUSION**

For the foregoing reasons, the court GRANTS the Defendants'

Motion to Dismiss and/or For Summary Judgment.  The clerk of court is hereby

directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 21, 2007.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

---

*Panoke v. U.S. Army Military Police Brigade, Hawaii, et al.,* Civ. No. 05-00432 JMS/KSC, Order Granting Defendants' Motion to Dismiss and/or For Summary Judgment and Denying Plaintiff's Motion to Supplement the Record

---

[13](...continued)
As I entered the agreement to be assigned the TEMP position, Col. Claudio assured me that the position was labeled "temp" not because the duties and functions were expected to be temporary in nature, but because the permanent funding, which came from superior headquarters in Alaska, had not yet been finalized. . . . Col. Claudio promised me that my Training Team assignment would be renewed at the end of my term appointment or, in the alternative, that I would be re-assigned another similar Pacific Basin Training position within the Military Police Brigade at Ft. Shafter.

*Id.*  However, in his deposition testimony Plaintiff acknowledged that Claudio did not make any affirmations or promises to him with regard to what would happen to his employment after the temporary position expired.  *See* Pl.'s Dep. Tr. at 87 (attached as Ex. A. to Watson Decl.). Claudio "did not indicate anything or mention or discuss anything about the position, the temporary position hire that I was in and what would happen thereafter."  *Id.*  Further, on July 25, 2002, Plaintiff signed a form acknowledging: "I understand that I am accepting a term appointment which does not afford any permanent status and may be terminated at any time." Defs.' Ex. DD.